IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RAYDREKOS SATCHER, #185874 | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Number: 2:06cv957-MEF |
| | * | |
| D. T. MARSHALL, et al | * | |
| | * | |
| Defendants. | * | |

## SPECIAL REPORT

COMES NOW the Defendants Sheriff D. T. Marshall, Deputy Sheriff Derrick Cunningham, Montgomery County Detention Facility, and Montgomery County Commission, by and through its attorney of record, Thomas T. Gallion, III and the law firm of Haskell Slaughter Young & Gallion, LLC and in response to this Honorable Court's Order dated January 9, 2007 submit the following Special Report to this Court.

## DOCUMENTS

Affidavit of D.T. Marshall

Affidavit of Derrick Cunningham

Affidavit of Gina M. Savage

Medical Treatment for DOC Inmates (Policy Number F-107)
Montgomery County Detention Facility
Policy and Procedure Directive

Receipt of MCDF Identification Card dated 09-06-06

Incident Report dated 09-10-06

Release Information dated 09-13-06

Receipt of MCDF Identification Card dated 09-25-06

Release Information dated 10-03-06

## PLAINTIFF'S ALLEGATIONS

Plaintiff filed his complaint on October 9, 2006 against Defendants Sheriff D. T. Marshall, Deputy Sheriff Derrick Cunningham, Montgomery County Detention Facility, Montgomery County Commission, and Montgomery County Medical Staff.

Plaintiff alleges that on September 6, 2006, he and other inmates were transported from Kilby Correctional Facility to Montgomery County Detention Facility for court appearances. On October 10, 2006, Plaintiff and a pre-trial detainee got into a fight.[1] Plaintiff was taken to the nurse's station but alleges that he received no medical treatment even though his mouth was bleeding from the fight. The nurse on duty contacted Sgt. Perry Woods at Kilby Correctional Facility and Plaintiff was transported back to Kilby. Upon arriving at Kilby, Plaintiff was given medical attention and then transferred to Baptist South Medical Center where he receive five (5) stitches inside and outside his mouth on the lower lip left side. The Plaintiff alleges that the Montgomery County Detention Facility personnel failed to protect him from assault by placing him in a cell with a "high risk of violence". Plaintiff alleges that this is a violation of his 8th and 14th Amendment Rights. The Plaintiff also alleges that the Defendants failed to provide him with proper medical care and that their disregard of Plaintiff's injury was unprofessional neglect of duty. The Plaintiff concludes that the Defendants violated his constitutional

---

[1]  The records of Montgomery Detention Facility indicate that the true date of the fight was September 10, 2006, not October 10, 2006.

rights by placing him in a hostile environment without providing him a safety assault free jail and that Defendants did not provide him adequate medical care.

FACTS

1.      Plaintiff is a Department of Corrections inmate housed at Kilby Correctional Facility.  On September 6, 2006, Plaintiff was transported to Montgomery County Detention Facility ("MCDF") for a court hearing set for September 28, 2006 for promoting prison contraband. (See Affidavit of Gina M. Savage.)  When he entered the Montgomery County Detention Facility, he signed a form stating that he had no enemies incarcerated at MCDF.  (See Receipt of MCDF Identification Card dated 09-06-06.)

2.      It is the policy of the Montgomery County Detention Facility that every effort is made on the part of facility personnel to ensure safe custody, decent living conditions and fair treatment of all inmates.  (See Affidavits of D. T. Marshall and Derrick Cunningham.)

3.      On September 10, 2006, Plaintiff came out of his cell and informed the booth operator that he was injured.  His lips were swollen and bleeding.  Plaintiff stated that his roommate had him in the mouth for no apparent reason.  Officers were called to investigate and Plaintiff was taken to the medical unit.  (See Affidavit of Gina Savage.) Inmate Lonnie Boykin, the individual housed in the cell with Plaintiff, was questioned and stated that when he awoke, Plaintiff was standing over his head masturbating and that a fight had ensured and Inmate Boykin admitted hitting Plaintiff.  (See Affidavit of Gina Savage and Incident Report.)

4.    Medical records show that the Southern Health Partners nurse examined Plaintiff, cleaned his lip, gave him an ice pack for swelling and was making arrangements to send him to the hospital for sutures when it was determined that Plaintiff was a DOC inmate.   (See Affidavit of Gina Savage.)    In compliance with Montgomery County Detention Facility Policy and Procedure F-107, Kilby was notified that Plaintiff had been in a fight and required medical attention.   (See copy of Montgomery County Detention Facility Policy and Procedure Directive – Medical Treatment for DOC Inmates Policy Number F-107.)  Sergeant Woods with Kilby called MCDF and instructed the Sergeant in Booking to have Plaintiff transported to Kilby for treatment.   Plaintiff was returned to Kilby for medical treatment, who sent him to the hospital for stitches.   After treatment, Plaintiff was returned to MCDF approximately five hours later. (See Affidavit of Gina Savage.)

5.    The Incident Report indicates that Inmate Boykin was charged with B-07 fighting; B-16 violating rules or regulations and C-17 acting in a way that disrupts or interferes with security or orderly running of the detention facility.   The Incident Report indicated that Plaintiff was charged with B-07 fighting; B-16 violating rules or regulations; C-04 indecent exposure (masturbating); C-09 engaging in a sexual act and C-17 acting in a way that disrupts or interferes with security or orderly running of the detention facility.   (See copy of Incident Report dated 09-10-06.)

6.    On September 11, 2006, Plaintiff was placed in protective custody at his request.   While in the isolation cellblock, he broke a sprinkler head causing his cell to be flooded.   He stated that he did not want to be placed in isolation.   He was given a mop and bucket and was ordered to clean his cell.   After cleaning his cell, he was placed in

restraints and relocated to cell 4-I-14. At this time, Plaintiff stated he was suicidal. He was moved to Booking without incident for observation. (See Affidavit of Gina Savage.)

7.    On September 13, 2006, when he was released back to Kilby, Plaintiff signed a statement stating that he was not injured in any way while incarcerated at the Montgomery County Detention Facility. (See Affidavit of Gina Savage and Release Information dated September 13, 2006.)

8.    On September 25, 2006, Plaintiff was again transported from Kilby to the Montgomery County Detention Facility to appear in Court on September 28, 2006. When he entered the Facility, he again signed a statement stating that he had enemies. After being sentenced on September 28, 2006, Plaintiff was returned to Kilby on October 4, 2006. Before being returned to Kilby, Plaintiff signed a statement that he had not been injured while incarcerated in the Montgomery County Detention Facility. (See Affidavit of Gina Savage.)

9.    The records indicate that Plaintiff did not file any grievances or complaints while incarcerated in the Montgomery County Detention Facility. (See Affidavit of Gina Savage.)

## DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    Defendants did not violate any of the Plaintiff's constitutional rights afforded him under law.

3.    Plaintiff failed to exhaust his administrative remedies by taking advantage of the inmate grievance system in place at the Montgomery County Detention Facility.

Plaintiff's claims should therefore be dismissed. *Alexander v. Hawk*, 159 F. 3rd 1321 (11th Cir. 1998).

4.      Defendant Marshall avers that he is entitled to immunity pursuant to the Eleventh Amendment to the United States Constitution and/or qualified immunity from suit.

5.      Defendants aver that they acted in a manner that has been in accordance with previous court rulings regarding the operation of the Montgomery County Detention Facility.

6.      Defendants aver that the prison regulations in question were reasonably related to legitimate penological interests.


MEMORANDUM IN LAW

The Plaintiff's claims do not rise to a constitutional violation. The Plaintiff cannot demonstrate that the conditions at the facility are sufficiently serious or that the Defendant Marshall was deliberately indifferent to his health or safety.

Grievance procedures are available to inmates to address living conditions at the Montgomery County Detention Facility. Plaintiff failed to file any grievance regarding any of his claims in the Complaint. Plaintiff therefore failed to exhaust available administrative remedies, and his claims should therefore be dismissed. *Alexander v. Hawk,* 159 F. 3rd 1321 (11th Cir. 1998).

Plaintiff's claims for damages against Defendant Marshall in his official capacities under 42 U.S.C. §1983 should be dismissed because in his official capacities, Defendant Marshall is not considered "person" subject to liability under §1983. *Will v.*

*Michigan Dept. of State Police*, 491 U.S. 58 (1989).  Any such official capacity claims must also be dismissed because Defendant is entitled to immunity under the Eleventh Amendment.  *Lancaster v. Monroe County,* 16 F. 3rd 1419 (11th Cir. 1997).

To the extent Plaintiff has asserted his claims against Defendant Marshall in his individual capacity, he is entitled to qualified immunity.  "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzales v. Lee County Housing Authority,* 161 F.3rd 1290, 1295 (11th Cir. 1998).  Defendant Marshall was acting within the scope of his discretionary authority, and the burden is therefore on the Plaintiff to demonstrate that his actions violated clearly established law based upon objective standards.  Plaintiff cannot meet this burden; therefore, his claims should be dismissed.

Plaintiff must also establish a casual connection between an act of a supervising official and the alleged constitutional violation.  *Smith v. State of Alabama*, 996 F. Supp. 1203, 1212 (M.D. Ala. 1998).  Defendant is a supervisory official.  Plaintiff has failed to establish a casual connection between any of his actions and any alleged constitutional violation.  Plaintiff's claims against Defendant Marshall should therefore be dismissed.

There is no evidence that Defendants had a subjective awareness of a relevant risk of serious harm to the Plaintiff, and that they disregarded that risk.  The prison regulations in place at the Montgomery County Detention Facility are reasonable and do not infringe the Plaintiff's constitutional rights.  *Turner v Safley,* 482 U.S. 78 (1997).

The Defendants further submit that Plaintiff has also failed to exhaust any applicable grievance procedure with respect to this claim. Defendants therefore respectfully request that this Court dismiss the Plaintiff's claims and for any other relief to which they may be entitled.

Respectfully submitted this 13th day of February 2007.

s/ Thomas T. Gallion, III
Thomas T. Gallion, III        (GAL010)
Attorney for Defendant Marshall
ASB-5295-L74T
E-mail: mp@hsy.com

OF COUNSEL:
Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
Post Office Box 4660
Montgomery, Alabama 36103-4660
334-265-8573
fax number: (334) 264-7945

CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of February 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and/or I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Raydrekos Satcher #185874
KCB-80
Post Office Box 150
Mt. Meigs, AL  36057

s/ Thomas T. Gallion, III
Of Counsel

50051-592
#24,060

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

RAYDREKOS SATCHER, #185874    )
                                     )
             **Plaintiff,**      )
                                     )
     **v.**                         )    **CIVIL ACTION NO. 2:06-CV-957-MEF**
                                     )
**D. T. MARSHALL, et al.,**         )
                                     )
            **Defendants.**    )

## AFFIDAVIT OF D. T. MARSHALL

Before me, a Notary Public, personally appeared D. T. Marshall and after being duly sworn, did say as follows

1.    My name is D. T. Marshall and I am Sheriff of Montgomery County, Alabama.

2.    I have not violated the constitutional rights of Inmate Raydrekos Satcher.

3.    It is the policy of the Montgomery County Detention Facility that every effort will be made on the part of facility personnel to ensure safe custody, decent living conditions, and fair treatment for all inmates.

4.    The total, daily operations of the jail are managed by the Director of the Detention Facility, employed by the Montgomery County Sheriff's Office.

 

                                       D. T. Marshall

Sworn to and subscribed before me this _1st_ day of _February_, 2007.

_____
Notary Public
My Commission Expires September 13, 2010

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **RAYDREKOS SATCHER, #185874** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 2:06-CV-957-MEF** |
| | ) | |
| **D. T. MARSHALL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF DERRICK CUNNINGHAM

Before me, a Notary Public, personally appeared Derrick Cunningham and after being duly sworn, did say as follows

1.    My name is Derrick Cunningham. I am Chief Deputy with the Montgomery County Sheriff's Office, Montgomery, Alabama.

2.    I have not violated the constitutional rights of Inmate Raydrekos Satcher.

3.    It is the policy of the Montgomery County Detention Facility that every effort will be made on the part of facility personnel to ensure safe custody, decent living conditions, and fair treatment for all inmates.

4.    The total, daily operations of the jail are managed by the Director of the Detention Facility, employed by the Montgomery County Sheriff's Office.

_____
Derrick Cunningham

Sworn to and subscribed before me this _2nd_ day of _February_ , 2007.


_Lenn (Hines) Cates_
Notary Public
My Commission Expires September 13, 2010

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **RAYDREKOS SATCHER, #185874** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:06-CV-957-MEF** |
| | ) | |
| **D. T. MARSHALL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF GINA M. SAVAGE

Before me, a Notary Public, personally appeared Gina M. Savage and after being duly sworn, did say as follows

1.     My name is Gina Savage.  I am Director of the Montgomery County Detention Facility.

2.     I have not violated the constitutional rights of Inmate Raydrekos Satcher.

3.     Inmate Satcher was transported from Kilby Correctional Facility September 6, 2006, in response to a Court Order from Judge Charles Price dated July 26, 2006.   The inmate was scheduled for a court hearing September 28, 2006, for promoting prison contraband.  When he entered the Montgomery County Detention Facility on September 6, 2006, he signed a form stating that he had no enemies incarcerated here.

On September 10, 2006, Inmate Satcher came out of his cell and informed the booth operator that he was injured.  His lips were swollen and bleeding.  He stated that his roommate

had hit him in the mouth. Officers were called to investigate and Inmate Satcher was taken to the medical unit for treatment. Inmate Lonnie Boykin, the individual housed in the cell with Inmate Satcher, stated that when he awoke, Inmate Satcher was standing over his head masturbating. A fight ensued and he hit Inmate Satcher.

Medical records show that the Southern Health Partners nurse examined Inmate Satcher, cleaned his lip, gave him an ice pack for the swelling and was making arrangements to send him to the hospital for sutures when it was determined that he was a DOC inmate. At approximately 0700 hours, in compliance with MCDF Policy and Procedure #F-107(see attached), Kilby was notified that Inmate Satcher had been in a fight and required medical attention. At approximately 0710 hours Sergeant Woods with Kilby called the Detention Facility and instructed the Sergeant in Booking to have Inmate Satcher transported to Kilby for treatment. At approximately 0750 hours Inmate Satcher was returned to Kilby and at approximately 1255 hours he was picked up and returned to the Detention Facility.

Montgomery County has a contract with Southern Health Partners to provide medical treatment for inmates housed in the Detention Facility. On September 11, 2006, Inmate Satcher was examined by the Southern Health Partners nurse. His lips were cleaned and checked. On September 12, 2006, Inmate Satcher's lips were checked by the Southern Health Partners physician and again on September 13, 2006, his lips were checked by the Southern Health Partners nurse. The sutures remained intact and it was noted that his lips were healing well.

On September 11, 2006, Inmate Satcher was placed in Protective Custody at his request. While in the isolation cellblock he broke a sprinkler head causing his cell to be flooded. He stated he did not want to be placed in isolation. He was given a mop and mop bucket and ordered to clean his cell. After cleaning his cell, he was placed in restraints and relocated to

4-I-14. At this time he stated he was suicidal. He was moved to Booking, without incident, for observation.

On September 13, 2006, Inmate Satcher was returned to Kilby. When he was released back to Kilby, he signed a statement stating he was not injured in any way while incarcerated in the Detention Facility.

On September 25, 2006, Inmate Satcher was again transported from Kilby to the Detention Facility to appear in Court September 28, 2006. When he entered the Facility he signed a statement stating he had no enemies. After being sentenced on September 28, 2006, Inmate Satcher was returned to Kilby on October 4, 2006. Before being returned to Kilby, he signed a statement stating that he had not been injured while incarcerated in the Montgomery County Detention Facility.

4.    Inmate Satcher did not file any grievances or complaints while incarcerated in the Detention Facility.

_____
                     Gina M. Savage

Sworn to and subscribed before me this _1st_ day of _February_ 2007.

_____
Notary Public
My Commission Expires September 13, 2010

*Montgomery County Detention Facility*
**Policy and Procedure Directive**

# MEDICAL TREATMENT
# FOR DOC INMATES

**Issued: October 1, 2003 (Revised December 2004)**                    **Policy Number F-107**

---

**POLICY:**

It is the policy of the Montgomery County Detention Facility to provide routine
and emergency medical care to all inmates being held without regard to status, race,
religion, or creed.

**PROCEDURE:**

The following procedures should be followed when inmates sentenced to the Department
of Corrections are being temporarily housed in the Detention Facility and are in need
of routine or emergency medical care.

A.     Routine Medical Care

    1.     When the physician examines an inmate and determines that a
    medical referral is required, the following procedure should be
    followed.

        a.     Before the referral appointments are made for any
        inmate, the medical staff and medical assistant clerk
        should check the inmate's file to ensure that the inmate
        has not been sentenced.  It is the responsibility of the
        medical staff, in conjunction with the medical assistant
        clerk, to determine the status of an inmate, whether sentenced
        or non-sentenced, before referral appointments are made.

        b.     When referral appointments are scheduled for inmates, the
        day before the actual appointment the medical assistant clerk
        should verify with the appropriate personnel to ensure that the
        inmate has not been sentenced to the Department of
        Corrections.

        c.     If it is determined that an inmate has been sentenced to the
        Department of Corrections, the medical assistant clerk should
        notify the transportation supervisor immediately.  The

transportation supervisor should then contact the Department of Corrections to have the inmate transported to Kilby or Tutweiler as soon as possible. The Department of Corrections should also be informed of the type of illness or injury and the inmate's medical condition. Only if arrangements have been made for the transport of the inmate to the custody of the DOC should the medical assistant clerk cancel the inmate's appointment.

B.    Emergency Medical Care

1.    When inmates sentenced to the Department of Corrections are being temporarily housed in the Detention Facility and they require emergency medical care or their condition is life threatening, the following procedure should be followed.

   a.    If the on-duty nurse determines that fire medics and ambulance services are needed, the Sheriff's Office dispatch should be notified immediately by telephone or radio. In the event a nurse is not on duty, the shift commander will make the decision whether or not fire medics and ambulance services are needed.

   b.    Inmates with life threatening emergencies should be transported to Baptist South Emergency Room or the nearest emergency room if recommended by the attending emergency medical staff. If a life threatening emergency occurs and a nurse is not on duty, the shift commander should take appropriate action to ensure the inmate receives immediate emergency medical care. The nursing supervisor should be notified of the incident the following work day.

   c.    When an emergency occurs during normal working hours, the nurse and transportation supervisor should be notified. The transportation supervisor should notify the Department of Corrections, Central Records, at phone number 240-9504. This notification should also be confirmed in writing.

   d.    The Department of Corrections/Central Records should be notified that the inmate was transported to the hospital and that the Department of Corrections should assume immediate custody of the inmate. This notification should also be confirmed in writing.

If an inmate requires emergency medical care after 5:00 PM, the on-duty shift commander should notify Kilby's or Tutweiler's shift commander and advise them that an inmate sentenced to Department of Corrections requires immediate medical care, that the inmate has been transported to the hospital, and the name of the hospital where the inmate has been taken. Also advise them that the Department of Corrections should assume immediate custody of the inmate. This request should be confirmed in writing.

2.  If the Department of Corrections does not assume custody of the inmate within a reasonable amount of time, the officers should notify his/her shift commander. The shift commander should follow the procedure outlined in paragraph (d) above to ensure the Department of Corrections assumes custody of the inmate.

## Montgomery County Detention Facility

Date: _09/06/05_

### Receipt of MCDF Identification Card

Inmate Name: _Raydrekous Satcher_    Booking No.: _8812?_

By signing below I acknowledge receipt of a MCDF identification card on
_09/06/05_

### Receipt of MCDF Rules and Regulation Handbook

I have received a copy of the Rules and Regulations Handbook governing inmate at the MCDF. I understand while I am in this facility I must abide by these rules and regulations. I understand that if I violate these rules and regulations I may be subject to disciplinary action and/or criminal prosecution. I understand that I am responsible for any loss or damage to the handbook and will be required to return the book at the time of my release.

_✓_ I can read the Rules and Regulations Handbook.
_____ I cannot read and request that it be read to me.
_____ Handbook read to inmate by Officer _____

Signature of Inmate: _Raydrekous Satcher_

### Acknowledgment of No Enemies in the MCDF

To my knowledge, I have no enemies incarcerated in the Montgomery County Detention Facility. I do not wish to be placed in protective custody.

Signature of Inmate: _Raydrekous Satcher_

Signature of Officer: _W. E._

# MONTGOMERY COUNTY DETENTION FACILITY
## INCIDENT REPORT

**REPORT#:** 09/10/2006/001                        **DATE OF REPORT:** 09/10/2006

**TIME OF REPORT:** 0619 Hours        **LOCATION:** 3-North(3-D Cell Block)

**TYPE OF INCIDENT:**    Inmates Fighting                                **TIME:** 1121Hour

**REPORTED BY:**    Moss                        A.                        C.O.
    
    LAST NAME            FIRST NAME        RANK        ID#

## INMATES INVOLVED IN INCIDENT

| NAME (LAST, FIRST) | RACE/ SEX | BOOKING # | CELL | WITNESS/VICTIM/OFFENDER (INDICATE ONE) |
|---|---|---|---|---|
| Boykin, Lonnie | B/M | 87513 | 3-D-06 | Offender |
| Satcher, Raydrelkous | B/M | 88121 | 3-A-07 | Victim |
| | | | | |
| | | | | |
| | | | | |

### INJURY TO VICTIM

**EXTENT OF VICTIM INJURY:**    (X)    MINOR    ( )    SERIOUS    ( )    FATAL

**TYPE OF INJURY:**    See nurse's notes

**VICTIM HOSPITALIZED:**    ( )    YES    (X)    NO

**IF "YES" WHAT HOSPITAL:**    See nurse's notes

### MEDICAL ACTION

**DESCRIBE MEDICAL ACTION:**    See nurse's notes

## DETAILS OF INCIDENT
### DESCRIBE INCIDENT IN DETAIL (WHO, WHAT, WHERE, WHEN, HOW, WHY, AND ACTION TAKEN BY OFFICER)

On September 10, 2006, Officer Moss was assigned as 3-North control booth operator. At approximately 0619 hours, Officer Moss observed an unidentified inmate in 3-D cell block knocking on the door. Officer Moss also observed that the inmates lips were badly swollen and bleeding. Officer Moss allowed the inmate to exit 3-D cell block into the vestibule area. Officer Moss identified the inmate by his wrist band as Inmate Satcher. Officer Moss questioned Inmate Satcher about his injury. Inmate Satcher stated that his roommate had hit him in his mouth. Officer Moss later identified Inmate Satcher's roommate as being Inmate Boykins. Officer Moss then called booking, via telephone, and notified Sergeant Ford of the incident.

At approximately 0624 hours, Corporal Rodgers and Officer Tolbert arrived on 3-North. Officer Tolbert handcuffed Inmate Satcher and escorted him to medical to be examined by the nurse(see nurse's notes). Corporal Rodgers entered 3-D cell block and escorted Inmate Boykins to the vestibule area. Once into the vestibule area, Corporal Rodgers placed handcuffs on Inmate Boykins and escorted him to booking. Sergeant Ford questioned Inmate Boykins about hitting Inmate Satcher. Inmate Boykins admitted to hitting Inmate Satcher because he was standing over his head masturbating when he woke up. Corporal Rodgers also questioned Inmate Satcher concerning the incident. Inmate Satcher stated that he was sitting on his bed and that Inmate Boykins hit him for no apparent

(Continued from first page)     INCIDENT REPORT#  09/10/2007/001

reason. At approximately 0655 hours, Nurse Burkette informed Sergeant Ford of Inmate Satcher's need for further medical treatment. Sergeant Sanderson notified Major Robinson of the incident, informing her that one of the inmates was a DOC(Kilby) inmate. Major Robinson instructed Sergeant Sanderson to get the nurse to call Kilby and get clearance for Inmate Satcher to be seen for medical treatment. At approximately 0700 hours, Nurse Burkett called Kilby Correctional Facility and spoke with Sergeant Woods. Nurse Burkett informed Sergeant Woods that Inmate Satcher was a DOC inmate and that he needed medical treatment. At approximately 0710 hours, Sergeant Woods called MCDF and instructed Sergeant Sanderson to have Inmate Satcher transported to Kilby Correctional Facility. At approximately 0750 hours, Sergeant Ford and Corporal Owens departed MCDF en route to Kilby Correctional Facility with Inmate Satcher.

At approximately 1255 hours, Corporal Carroll and Officer Townsend departed the facility en route to Kilby Correctional Facility to transport Inmate Satcher back to MCDF.

Officer Moss is requesting that Inmate Boykins and Satcher go before the disciplinary clerk on the following charges:

Boykins:

B-07: Fighting
B-16: Violating rules or regulations
C-17: Acting in a way that disrupts or interferes with security or orderly running of the Detention Facility

Satcher:

B-07: Fighting
B-16: Violating rules or regulations
C-04: Indecent exposure(masturbating)
C-09: Engaging in a sexual act
C-17: Acting in a way that disrupts or interferes with security or orderly running of the Detention Facility

REPORT#    09/10/2006/001

By signing below I concur with the content of the report.

Report prepared by:   _Cpa. McGs_                    Date:  09/10/2006

Supervisor Signature:  _Sgt Sanderson_               Date:  09/10/2006

By signing below I concur with the content of the report.

Responding Officers:

_Cpl. Arnos_                     Date:  09/10/2006

_Cpl w. Ret_                     Date:  09/10/2006

_M. Follis_                      Date:  09/10/2006

_M. Townsend_                    Date:  09/10/2006

_M. Pannell_                     Date:  09/10/2006

_Sgt M. Lund_                            9-10-06

By signing below I concur with the content of the report.

Medical Staff:

_R. Burkette, Lpn_               Date:  09/10/2006

_____            Date:

_____            Date:



**Montgomery County Sheriff's Off**
**115 S. Perry St**
**Montgomery, AL 36104**

**RELEASE INFORMATION**                                    09/13/2006

NAME: SATCHER, RAYDREKOUS TYRONE

DOB: 6/25/79  SSN: 421067616

Booking Number: DOC0000001046

---

How Released: Returned to DOC (Kilby)

Date Released: 09/13/06

---

Release of Property

Name of Officer Releasing Property: Cpl. Roberson

I have received all of my property from the Montgomery County Detention Facility.

Date Received: 09/13/06          Prisoner Signature: x Raydrekous Satcher

---

Statement of Release

I, RAYDREKOUS TYRONE SATCHER , being released this 13 **day of September, at** 7:26 am state that I was not physically injured in any manner while I was in the Montgomery County Detention Facility nor was I hurt in any manner while being arrested.

A. Findley                          x Raydrekous Satcher

Witness                             Signature of Person being Released

Montgomery County Detention Facility

Date: **09/25/06**

## Receipt of MCDF Identification Card

Inmate Name: **Raydrekous Tyrone Satcher**    Booking No.: **88121**

By signing below I acknowledge receipt of a MCDF identification card on
**09/25/06**

## Receipt of MCDF Rules and Regulation Handbook

I have received a copy of the Rules and Regulations Handbook governing inmate at the MCDF. I understand while I am in this facility I must abide by these rules and regulations. I understand that if I violate these rules and regulations I may be subject to disciplinary action and/or criminal prosecution. I understand that I am responsible for any loss or damage to the handbook and will be required to return the book at the time of my release.

____✓ I can read the Rules and Regulations Handbook.

_____ I cannot read and request that it be read to me.

_____ Handbook read to inmate by Officer _____

Signature of Inmate: **Raydrekous Satcher**

## Acknowledgment of No Enemies in the MCDF

To my knowledge, I have no enemies incarcerated in the Montgomery County Detention Facility. I do not wish to be placed in protective custody.

Signature of Inmate: **Raydrekous Satcher**

Signature of Officer: **Cpl. Roberson**

**Montgomery County Sheriff's O ... e**
**115 S. Perry St**
**Montgomery, AL 36104**

### RELEASE INFORMATION

10/03/2006

NAME: SATCHER, RAYDREKOUS TYRONE

DOB: 6/25/79  SSN: 421067616

Booking Number: DOC0000001073

How Released: *Ret Kilby*

Date Released: *10-04-06*

---

Release of Property

Name of Officer Releasing Property: _____

I have received all of my property from the Montgomery County Detention Facility.

Date Received: *10-04-06*    Prisoner Signature: *X Raydrekous Satcher*

---

Statement of Release

I,RAYDREKOUS TYRONE SATCHER , being released this **3 day of October, at** 11:04 pm state that I was not physically injured in any manner while I was in the Montgomery County Detention Facility nor was I hurt in any manner while being arrested.

*Lt. M. Jackson*

Witness

*X Raydrekous Satcher*

Signature of Person being Released